**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE**

Civil Action No. 04-cv-01258-LTB-BNB

STUDENT MARKETING GROUP, INC.,
    Plaintiff,
v.

COLLEGE PARTNERSHIP, INC., f/k/a
COLLEGE BOUND STUDENT ALLIANCE, INC.,
    Defendant
_____

**ORDER ON MOTION FOR APPROVAL OF SUPERSEDEAS BOND AND TO STAY
PROCEEDINGS TO ENFORCE JUDGMENT PENDING APPEAL**
_____

This court entered judgment August 25, 2005 in favor of plaintiff Student Marketing Group, Inc., ("SMG") on a contract claim against defendant College Partnership Inc., ("CPI"). CPI moves for this Court to accept a security lien on unpatented mining claims as security for a supersedeas bond pending CPI's appeal of judgment. For the reasons stated below defendant's motion is DENIED.

**I.  Background**.

On August 25, 2005 this court entered judgment in favor of SMG in its contract dispute with CPI. The judgment was for $127,462.59 plus attorney fees. On September 15, 2005 CPI filed a motion appealing this judgment to the Tenth Circuit Court of Appeals. On September 8, 2005, CPI filed a motion under Fed. R.Civ.P. 62(d) requesting the court to accept a first security lien on unpatented mining claims in Utah as security for the supersedeas bond and to stay proceedings to enforce judgment pending appeal. CPI asserts that it has contacted all bond providers in the Denver area and they will only provide a bond for cash or for a letter of credit

from CPI's bank. CPI claims that it lacks the liquid cash to post cash collateral or to obtain a letter of credit from its banks that the surety bond companies require.

The unpatented mining claims CPI offers as collateral are owned by Kingsley Corporation, CPI's largest shareholder. Janice Jones ("Jones"), a Kingsley Officer and CPI's Executive Vice President, states in an affidavit that the unpatented mining claims have an appraised value of between $3.6 million and $8.7 million. The affidavit states that Kingsley capital is "seeking to sell the mining claims," and is willing to provide a first security lien on these claims to secure a stay of actions on enforcement of judgment on this matter. Kingsley corporation acquired these mining claims from Chartwell International, Inc., where Jones was also an officer and director. CPI provides an appraisal conducted in 2000 that states that the value of the claims is between $3.6 million and $8.7 million.

## II.  Analysis

Under Fed. R. Civ. P. 62(d) federal district courts may issue a stay of judgment requested by an appellant when the appellant provides a supersedeas bond. The purpose of the bond is to protect the appellee from loss during appeal. *Miami International Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986). A supersedeas bond is normally required where there is "some reasonable likelihood" that the appellant may not be able to pay the judgment in full and where posting the bond is practical. *Id.* (Internal cites omitted.) District courts have the discretion to waive the bond requirement, to allow a bond amount less than the amount of the judgment or to allow alternate forms of security to satisfy the bond requirement. *Id.* at 874. The burden of proof is on the appellant to show that posting a full bond is "impossible or impractical" and to offer an alternate plan that provides adequate protection of appellees interests. *Id.* (internal cite omitted.)

2

The same policy concerns that underlie a court's discretion in setting the amount of a bond apply to determining whether the appellee may offer alternate forms of security in lieu of the supersedeas bond. *See Poplar Grove Planting and Refining Co.,Inc., v. Bache Halsey Stuart, Inc.,* 600 F. 2d 1189, 1191 (5th Cir. 1979)(As an alternative to a supersedeas bond, a district court may exercise its discretion to "fashion some other arrangement for substitute security."); *Advanced Estimating System, Inc., v. Riney,* 171 F.R.D. 327, 328 (S.D. Flo. 1997)(rejecting a copyright as alternative security to a supersedeas bond as failing to ensure appellant's ability to satisfy the judgment during the pendency of the appeal); *Continental Insurance Company v. Wichita Federal Savings and Loan Assn.,* No. 84-1218, 1989 WL 46257 at *1(D. Kan. April 18, 1989)(Approving a cash deposit as alternative security because it "serves the same purposes of the supersedeas bond.")

I therefore analyze CPI's offer of an interest in unpatented mining claims to ascertain first, if CPI has demonstrated that it is unable to provide a supersedeas bond and second, if this alternative form of security adequately protects the interests of SMG. For both inquiries, the burden of proof is on CPI.

A.        Has CPI demonstrated that it cannot obtain a supersedeas bond?

CPI asserts that it has contacted every bonding company in the Denver area and they all require either cash or a letter of credit from CPI's bank before they will provide a supersedeas bond. CPI also states that due to its financial status, it cannot provide the cash and it cannot obtain such a letter of credit. As support for these statements, CPI offers Jones' affidavit, stating that she is "familiar with (CPI's) financial situation" and that CPI "does not have liquid funds to post a cash bond, or to deposit in an escrow account, as collateral for a supersedeas bond ."

SMG does not contest that Denver area bonding companies require cash or a letter of credit before requiring a bond. However SMG does argue that CPI's financial statements belie its contention that it lacks the necessary cash liquidity to obtain such a bond. SMG offers CPI's form 10QSB/A, filed with the Security and Exchange Commission ("SEC"), that shows CPI's financial status as of April 30, 2005. This form states that none of the current litigation in which CPI is involved will have a significant adverse impact on CPI (this litigation is not specifically mentioned). The SEC filings also state that CPI is facing a severe cash crisis and will need an immediate infusion of cash by the end of July to remain in operation. SMG argues that since CPI stayed in operation it presumably received this cash and thus should be able to obtain a bond.

CPI responds that in fact its financial filings support its argument that it lacks the resources to secure a bond. The 10QSB/A shows that the company has only $28,856 cash on hand, an accumulated deficit of $11,410,414 and a negative net worth of $3,668,080 as of April 30, 2005. CPI also states that even though its 10QSB/A stated that this litigation would not have a material adverse effect on the company, after April 30, 2005 it entered into agreements related to other litigations and that executing this judgment would constitute a default on the other agreements, making CPI liable for $450,000 - $500,000, which adversely effect the company.

The record before me is insufficient to reach a definitive conclusion regarding CPI's finances and whether or not CPI has the cash available to obtain a bond. I do note however, that CPI in its motion offered only an affidavit containing a conclusory statements from Jones. It was SMG in its response that provided more detailed financial information about CPI. I also note that the financial filings, current through April 30, 2005 and filed on June 27, 2005, state in regard to each outstanding litigation, both those specifically identified and those not specifically identified

(including this one) that "A negative resolution of this dispute is not expected to have a material adverse effect on our operations." At a minimum, the arguments and information provided by SMG raise serious doubts as to whether CPI in fact lacks the resources to obtain a bond.

B.      <u>Will the Alternative Form of Security Protect the Interests of SMG?</u>

The purpose of a supersedeas bond is to "protect judgment creditors as fully as possible without irreparably injuring judgment debtors." *Miami International Realty, supra,* 807 F.2d at 873. (Internal cite omitted.) When a court considers alternate forms of security in place of a supersedeas bond, it must ensure that this alternate form of security will "furnish equal protection to the judgment creditor." *Poplar Grove Planting & Refining Co., supra,* 600 F. 2d at 1191. The defendant must present a "'financially secure plan'" to maintain its ability to satisfy the judgment during the pendency of the appeal." *Advanced Estimating Systems Inc., supra,* 171 F.R.D. at 328 (quoting *Poplar Grove Planting & Refining Co, supra,* 600 F.2d at 1191.) It is important in this analysis for the court to be able to determine the market value of the alternate security at the time it is offered and at the end of the appeal. *See Advanced Estimating Systems, Inc., supra,* 171 F.R.D. at 328.

Here, CPI offers a security interest in unpatented mining claims in lieu of a supersedeas bond. The question before me is whether these claims protect SMG's interests in the event CPI loses on appeal and becomes insolvent and unable to pay the judgment. SMG raises numerous questions regarding the viability of these mining claims as alternatives to a supersedeas bond. SMG has provided Chartwell's SEC form 10-KSB/A from 2004, which SMG contends contains information that conflicts with CPI's claims about these mining claims. SMG states that the 10-KSB/A describes how the SEC required Chartwell to reduce the claimed value of the claims from

5

approximately $2 million to zero. SMG points out that the 10-KSB/A describes an appraisal of the value of the mineral rights that is later than the one CPI provided, raising questions about the accuracy of the appraisal CPI provided in their motion. The 10-KSB/A refers to a prior lien on these mining claims, held by CPI President Jack Jones. The 10-KSB/A also states that Chartwell has been unsuccessful in finding partners or buyers for these claims. This is particularly significant since CPI contends that the market value of these claims far exceeds the amount of the judgment.

CPI addresses some of SMG's arguments. CPI argues that these claims are listed on Chartwell's SEC filings as having zero value because SEC rules require valuing the claims based on the revenue they generate, not on their underlying market value. But CPI does not address SMG's other claims. For example, while CPI asserts that Kingsley Capital is "attempting to sell" this mining interest in its motion September 8, 2005, it does not address the statements in Chartwell's 10-KSB/A that "efforts (to sell and/or dispose of the property) have been unsuccessful to date" and "there can be no assurance that we will be able to sell the claims and/or rights on terms acceptable to us."

CPI has the burden of showing that these claims will protect the interests of SMG, and they have not done so. They offer an appraisal that is five years old. Such an appraisal by definition cannot attest to the present value of the claims nor can it speak to their value once CPI's appeal is concluded. Moreover, Chartwell's own financial statements state that they have been unable to sell these claims, and that there may be prior liens or claims on these interests.

Using alternative security in lieu of a supersedeas bond is not preferred, precisely because it is difficult for a court to ensure that an alternative security will protect appellee's interests. This is particularly true of the unique and speculative nature of unpatented mining claims. The instant

6

case vindicates the wisdom of this preference for a more traditional supersedeas bond. The information CPI has provided does not give this court sufficient assurance that a security interest on the mining claims will protect SMG's interest in obtaining a judgment if CPI loses its appeal. Moreover, it is not clear why, if these mining claims have the value CPI claims, that CPI cannot use these mineral rights as collateral to obtain a loan that would enable CPI to obtain the cash for a supersedeas bond. I therefore find and conclude that the unpatented mining claims are not acceptable to serve as a supersedeas bond.

CPI requests in the alternative that the court set a hearing to allow CPI to offer additional testimony on the value of the mining claims or to consider alternative real estate assets in lieu of the traditional supersedeas bond. I decline to do so. The burden is on CPI to demonstrate that any asset it offers is sufficient to protect SMG's interests. It has offered these mining claims, and these have failed to meet this standard. If CPI or its stockholders have additional assets available, the appropriate next step is to use these assets to generate the cash to secure a bond, not to spend more time trying to use liens on real estate assets in place of a cash bond.

Therefore, it is so ORDERED:

CPI's motion to approve a first security lien on the unpatented mining claims as security for a supersedeas bond and to stay proceedings to enforce judgment pending appeal is DENIED.

**DONE and ORDERED,** this  20th  day of September, 2005 at Denver, Colorado.

                                      s/Lewis T. Babcock
                                      United States District Chief Judge