IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No. 04-cv-01258-LTB-BNB

STUDENT MARKETING GROUP, INC.,

    Plaintiff,

v.

COLLEGE PARTNERSHIP, INC.,
f/k/a COLLEGE BOUND STUDENT ALLIANCE, INC.,

    Defendant.
_____

ORDER
_____

Plaintiff Student Marketing Group ("SMG") filed a motion for attorney fees and costs after prevailing in a contract dispute with defendant College Partnership, Inc. ("CPI"). SMG claims $284,716.30 in attorney fees and costs. CPI challenges these costs and fees as unreasonable and requests an evidentiary hearing on this issue. For the reasons discussed below CPI's motion for a hearing is DENIED and SMG's motion for attorney fees and costs is GRANTED.

### I. BACKGROUND

The underlying claim in this case is a suit for breach of contract by SMG against CPI for violating the terms of the List Renewal Agreement ("Agreement"), under which SMG would provide CPI mailing lists for CPI's commercial use. The Agreement states that in any breach of the Agreement, the breaching party must pay attorney fees and costs to the non breaching party. CPI asserted counterclaims against SMG and sought damages of $1.5 million. On August 22, 2005 this Court granted summary judgment to SMG in its claim against CPI, and denied CPI's

counterclaims against SMG. This Court found that SMG was entitled to damages of $127,462.59, plus attorney fees and costs.

On September 2, 2005 SMG filed its motion for attorney fees and costs. CPI opposed SMG's motion on numerous grounds. However, it appeared that the parties had reached a settlement on attorney fees and costs, so on October 28, 2005 this Court issued an Order staying SMG's motion for attorney fees. The Settlement Agreement between CPI and SMG required CPI to make three payments totaling $167,200, the first payment of $75,000 was due December 1, 2005. Under the Settlement Agreement, failure by CPI to make a payment entitled SMG to request that the Court vacate the stay of October 28, 2005, allow CPI to file a sur-reply to SMG's motion, prior to the Court's ruling on the motion. The Settlement Agreement seems to have collapsed, and SMG filed a motion December 6, 2005 requesting the court to vacate the stay on SMG's motion for attorney fees. This Court issued an Order December 9, 2005 vacating the stay. CPI filed its sur-reply on December 16, 2005, challenging SMG's motion for attorney fees and requesting an evidentiary hearing.

At issue now is SMG's request for attorney fees and costs totaling $284,716.30. This includes $263,018.85 for SMG's principal Pittsburgh-based law firm, Kirkpatrick & Lockhart Nicholson Graham LLP ("KLNG,") and $21,697.53 for attorney fees and costs for the law firm of Lewis Scheid LLC, ("the Scheid firm,") SMG's Denver law firm retained for this case.

## II.  STANDARD OF REVIEW

A district court has "wide latitude" in determining the appropriateness and reasonableness of awards of attorney fees. *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1210 (10th Cir. 1986). Where attorney fees are provided for in a contract, a district court has "far less equitable

discretion" than in cases where attorney fees are awarded under a fee-shifting statute. *U.S. for the Use of C.J.C., Inc. v. Western States Mechanical Contractors, Inc.,* 834 F.2d 1533, 1549 (10th Cir. 1987). In contractual fee award cases, the role of the district court is to enforce the bargain between the two parties and "to make the non-breaching party whole." *Id.* at 1547. "Normally, where the court is merely enforcing a contractual provision authorizing attorney's fees, the fees are routinely awarded and the contract is enforced according to its terms." *Id.* at 1548. Unlike in the case of a fee-shifting statute, "the trial court is not responsible for independently calculating a 'reasonable' fee." *Id.* at 1549. The district court should only reject contractual attorney fees if they are "unreasonable or inequitable." *Id.* at 1550.

Accordingly, courts have rejected or reduced contractual attorney fees on grounds of inequity or unreasonableness where attorneys claim expenses not related to the underlying contract claim, *Fortier v. Donna Anna Plaza Partners,* 747 F.2d 1324, 1338 (10th Cir. 1984), where the prevailing party "could have obtained everything it was legally entitled to" without bringing a lawsuit, *Gorman Pub. Co. v. Stillman,* 516 F. Supp. 98, 112 (N.D. Ill. 1980), where the prevailing party did not prevail on other closely related claims, *U.S. v. Hankins Const. Co.,* 510 F. Supp. 933, 940 (E.D. Mo. 1981), or where the prevailing party rejected a settlement offer that was close to the full amount it was contractually entitled to, forcing the parties into unnecessary litigation. *Cable Marine, Inc., v. M/V Trust ME II,* 632 F.2d 1344, 1345-1346 (5th Cir. 1980).

Although attorney fee awards arising from a contract are subject to less severe scrutiny, a district court may still use the same factors as are used in statutory cases to determine if attorney fees are unreasonable. *Western States,* 834 F.2d at 1550. These factors include the number of

3

hours billed and the hourly rate charged. *Ramos v. Lamm,* 713 F.2d 546, 554-555 (10th Cir. 1983). The applicable hourly rate is the rate that is reasonable in the area where the litigation occurs, even for the fees of out of state lawyers. *Id.* Courts may also consider the extent to which the party has prevailed in the lawsuit. *Id.* at 556. Where the plaintiff has obtained "excellent results," the attorney fees should "encompass all hours reasonably expended."*Id.*

CPI argues that SMG is not entitled to the lesser scrutiny that usually governs contractual attorney fees. CPI contends that SMG deliberately employed aggressive litigation tactics as a corporate strategy, and that the Court should not reward such conduct. CPI has provided a letter from SMG's President and an affidavit from a CPI Vice-President purporting to show that SMG was determined to prevail in this lawsuit regardless of the cost. However, SMG's actual conduct of the litigation does not reveal an overly aggressive posture. The record shows that SMG provided CPI with warning before filing its complaint, sought only the damages allowed in the Agreement and won the case on a motion for summary judgment. Moreover, CPI provides no authority for the proposition that an aggressive litigation strategy, if it existed, is relevant to an assessment of contractually awarded attorney fees. CPI cites *Praseuth v. Rubbermaid, Inc.,* 406 F.3d 1245, 1257 (10th Cir. 2005) for the proposition that it is improper to impose the costs of a prevailing party's aggressive litigation strategy onto the losing party. However, *Praesuth* was addressing attorney fees awarded under fee-shifting statutes, and explicitly distinguished the standard governing private fee agreements. *Id.*

CPI also argues that the less rigorous standard for contract fee agreements applies only where the legal expenses were actually paid by the opposing party. This argument appears moot in light of the affidavits submitted by SMG's attorneys stating that SMG did in fact pay the

amount in fees and costs it is requesting in its motion. In any case, CPI has provided no authority, and this court is not aware of any, to support the idea that the payment arrangement between a client and its attorney is relevant to a determination of the reasonableness of attorney fees. I find and conclude that SMG is entitled to the less rigorous standard applied to attorney fees in contractual arrangements. I will accept SMG's submission of attorney fees unless there is evidence that these fees are unreasonable or inequitable.

### III.  DISCUSSION

CPI does not argue that there is some underlying inequity that justifies reducing KLNG's fees. Rather, CPI claims that KLNG's fees are unreasonable because they reflect an inefficient use of resources and excessive hourly rates. Specifically, CPI argues that KLNG billed too many hours, that KLNG's rates are too high and that KLNG has improperly requested reimbursements for costs that should be included in its hourly rates, and that were necessary only because SMG chose to work with out of state counsel. (CPI does not appear to challenge the Scheid firm's fees and costs.) I will address each of these arguments.

A.  Number of Hours

CPI's argues first that KLNG billed an excessive number of hours. CPI's principle evidence is that KLNG billed more hours than did CPI's law firm, Burg Simpson Eldredge Hersh & Jardine ("Burg Simpson").  I find this comparison unpersuasive. Burg Simpson is not a disinterested party, and the number of hours it devoted to this case is not useful evidence for assessing the reasonableness of KLNG's fees. Significantly, CPI provides no affidavit or other evidence that addresses the question of the reasonableness of KLNG's hours billed. In addition, SMG prevailed and CPI lost. This by itself casts doubt on CPI's judgment as to the resources

necessary in this case. It is at least equally plausible that Burg Simpson's hours were unreasonably low as that KLNG's hours were unreasonably high. At most, CPI shows that Burg Simpson has a difference of professional judgment with KLNG as to the proper number of hours to devote to this kind of case. It does not show that KLNG's hours were unreasonable.

CPI also argues that KLNG over-used paralegals, driving up the number of billable hours. Again, CPI offers only its own opinion, and a comparison to Burg Simpson's practices, as evidence for SMG's inefficient use of paralegals. SMG offers no independent third party evidence, and provides no affidavit addressing the number of hours of paralegal time SMG devoted to this case. CPI points out that the Scheid firm used no paralegals as evidence that KLNG over-used paralegals. The record does not address whether this disparity is because the Scheid firm incorporated paralegal fees into its overall fees, or whether the Scheid firm did not have any tasks requiring paralegal help. Even if KLNG did use paralegals more than the Scheid firm, this does not show that KLNG's use of paralegals was unreasonable.

Significantly, CPI does not assert that KLNG is seeking fees for legal services not attributable to this claim, or that KLNG has overstated the time it actually spent on this case. At most, CPI's argument suggests that KLNG could have represented SMG more efficiently, with fewer attorney and paralegal hours. But this does not show that KLNG's allocation of resources was necessarily unreasonable. *See Western States,* 834 F.2d at 1550 (use of two attorneys at trial where one might have been sufficient does not render claim unreasonable.)  Thus, CPI has not shown that number of hours KLNG billed was unreasonable.

B.   Hourly Rates

CPI argues next that SMG's hourly rates were unreasonably high. The KLNG rates

actually billed to SMG were: $377.20 to $404.80 for a partner, $193 to $216.20 for a 6th year associate, $157.50 to $161.00 for a 2nd year associate and $162.00 to $165.60 for a senior paralegal. CPI argues that these rates are higher than those charged by the Scheid firm, $250 an hour for Scheid, $185 an hour for a junior partner and $125 for an associate. In addition, CPI asserts that Burg Simpson's rates are lower than KLNG's: $275 an hour for Michael S. Burg (the principal partner working on this case), $200 an hour for other partner-level attorneys, $150 an hour for senior associate attorneys and $135 an hour for junior associates.

To further support this argument, CPI provides a six paragraph affidavit from Bennet S. Aisenberg, a licensed Colorado attorney since 1958. Four paragraphs recount Aisenberg's biography and qualifications. One paragraph states that he has reviewed KLNG's rates. Paragraph six contains a single conclusory statement, which states in whole: "The rates charged by Mr. McElhinny (KLNG's principal partner on this case) and the senior paralegal are well in excess of the prevailing rates changed by Colorado attorneys." Aisenberg offers no specific information about the rates of any particular law firm in Colorado, or what he considers to be a reasonable range of rates. Nor does he specify whether he is opining on the prevailing rates in Colorado as a whole or specifically in the Denver area.

To show that its hourly rates are reasonable, SMG offers the affidavit of Daniel M. Reilly of the Denver law firm of Hoffman, Reilly, & Pozner LLP ("HRP"). Reilly's affidavit states that he is a partner at HRP, has been a partner at two other Denver law firms, he is familiar with his own firm's hourly rates and is "generally familiar" with the rates of other Denver law firms. Reilly states that the rates of his firm are similar to those of KLNG. Reilly charges $400 an hour, one of his partners charges $450 an hour, the hourly rate for a mid-level to senior associate is

7

approximately $225 an hour, for a first year associate about $160 an hour and for a senior paralegal $170 an hour. Reilly states that KLNG's rates are "comparable" to the rates charged by HRP, and that KLNG's rates are "consistent with those charged by firms such as HRP and . . . reasonable rates for a boutique litigation law firms or large law firms handling commercial litigation in the Denver, Colorado area."

I find Reilly's affidavit to be more persuasive than Aisenberg's, because it describes specifically the Denver legal market, rather than Colorado as whole, and because it provides a specific comparison to the rates charged by another Denver law firm. Aisenberg provides his conclusory opinion that KLNG's rates are excessive, but no specific basis for this opinion and no specific point of comparison.  Moreover, Aisenberg states that the senior paralegal's rates are excessive, but his affidavit also states that Dianna Karg is an associate at KLNG and a senior paralegal, when in fact she is an associate and not a paralegal. It is thus unclear whether his conclusion regarding senior paralegal rates is based on KLNG's actual paralegal rates or is based on misconstruing Karg's rates as paralegal rates.

CPI argues that Reilly's affidavit does not establish that SMG's rates were reasonable because Reilly's rates reflect the complexity, sophistication and size of his cases, and that a case of this size does not merit these kinds of fees. This argument boils down to CPI offering its own opinion that HRP deserves to charge rates of approximately $400 an hour while KLNG does not. It does not refute Reilly's affidavit stating that KLNG's fees are reasonable for this kind of firm in Denver.  CPI's opinion that Reilly deserves these high fees but the KLNG attorneys do not is not relevant to determining if KLNG's rates are reasonable for the Denver market.

The lower rates charged by the Scheid firm and Burg are also not relevant. Scheid has not

8

testified that KLNG's rates are unreasonable, and CPI's assertion of its own rates as a basis for challenging its adversaries' rates is not persuasive. These lower rates show only that some law firms in the Denver area have lower rates than KLNG. They do not establish that KLNG's rates are unreasonable.

CPI also argues that the rates of KLNG's paralegals are excessive. It provides a survey from the National Association of Legal Assistants compiled in 2004. The survey shows that the average billing rate for the Rocky Mountain region was $79 per hour, the average billing rate nationally for large law firms is about $120 an hour, and the average billing rate for paralegals with more than 30 years of experience is between $102 and $116 per hour. This survey does not purport to state what an average, or reasonable, billing rate is for a senior paralegal in the Denver area. While this survey suggests that KLNG's paralegal rates may be towards the high end of the spectrum, it does not show that these rates are unreasonable.

I therefore find and conclude that the hourly rates charged by KLNG are not unreasonable in the Denver market.

C.     Costs and Expenses

CPI also challenges approximately $11,000 of SMG's miscellaneous expenses, asserting that they should have been included in hourly rates as "routine overhead expenses," and about $11,400 in travel expenses, some of which were only necessary because SMG chose to retain an out of state law firm. CPI cites to *Dewey v. Allstate Ins. Co.,* 739 F.2d 1494, 1496 (10th Cir. 1984) for the proposition that attorney fee awards should not include costs that are typical overhead costs. However, in *Dewey* attorney fees were governed by Kansas state law, not by a contract provision. *Dewey v. Allstate Ins. Co.,* 588 F. Supp, 479, 482 (D. Kan. 1982). It is thus

subject to the greater scrutiny applied to fee-shifting cases and not the more lenient standards of a contract agreement.

Moreover, *Dewey* cites to *Ramos,* also a case analyzing attorney fees in a fee-shifting statute. *Ramos,* 713 F.2d at 550. Even in *Ramos,* the court stated that overhead expenses should be disallowed as part of the firm's overhead only if that is the usual practice in the area. *Id.* at 559. CPI has provided no evidence regarding the usual practice as to billing overhead expenses in Denver, and so they have failed to show that SMG's practice is unreasonable.

Regarding travel costs, even under the stricter regime of *Ramos* the court established the relevant inquiry as whether travel costs "would normally be billed to a private client." *Id.* CPI has not provided any evidence as to the normal practice in the Denver area for billing travel costs for out of state attorneys to private clients. Also, SMG has in fact paid these costs to KLNG. Again, while it is possible that KLNG could have handled these expenses more efficiently, that does not show that these travel expenses were unreasonable.

CPI has thus failed to show that KLNG's costs and expenses are unreasonable.

D.     Tom Hiller's Fee

Tom Hiller ("Hiller") was an expert witness called by CPI and deposed at the request of SMG. In its original motion for attorney fees and costs, SMG requested that Mr. Hiller's invoice of $5,600.00 be charged to CPI and not to SMG. It is unclear if this remains an issue, since CPI does not raise it in its sur-reply. At any rate, SMG does not include this cost in its submission of costs and fees. SMG may claim Hiller's fee as a cost of this case or not, as it chooses. However, because  no breach of contract claim is before this court, and Hiller is not a party to this case, addressing the question of whether CPI or SMG is contractually obligated to Hiller is not at this

time a case or controversy within my jurisdiction. Federal courts do not issue advisory opinions. *Flast v. Cohen*, 392 U.S. 83, 96-97 (1968). I therefore decline to charge Hiller's fees to CPI.

### E.     Evidentiary Hearing

CPI requests an evidentiary hearing on the issue of attorney fees. Where facts are in dispute in a request for attorney fees, "an evidentiary hearing is generally preferred, if not required." *Michael A. Cramer, MAI, SRPA, Inc. v. United States,* 47 F.3d 379, 383 (10th Cir. 1995). However, a district court may determine attorney fees without a hearing if the district court determines "it has sufficient knowledge to make a decision without a hearing based on its experience with the case, and briefs and affidavits submitted by the parties." *Id.* at 383-384.

In this case, I find and conclude that I have sufficient information to make a determination of attorney fees without a hearing. KLNG has submitted information detailing its hours and rates. CPI does not challenge that these bills accurately show the hours KLNG expended, the rates KLNG charged, the expenses KLNG incurred or that these charges reflect the actual work on this case. CPI challenges the efficiency and costs of KLNG's representation, and whether KLNG should have billed SMG for certain costs and expenses. These are not factual disputes; they are differences of opinion. An evidentiary hearing will not help me resolve these questions.

Moreover, under the more relaxed standard of review for contractual attorney fees, it does not matter necessarily if KLNG's fees are higher than those of other firms, or whether they allocate more hours for certain tasks than other firms. It is sufficient if their fees and resource allocations are reasonable for firms of its type in the Denver market. KLNG has provided affidavit testimony that its fees are reasonable for this market, and CPI has not provided persuasive evidence that KLNG's fees are unreasonable.

11

I therefore find and conclude that an evidentiary hearing is unnecessary.

Therefore it is so Ordered that:

CPI's Motion for a hearing (Docket # 161) is DENIED, and

SMG's motion for attorney fees and costs (Docket # 112) is GRANTED, and judgment shall enter in favor of SMG and against CPI for attorney fees and costs in the sum of $284,716.30.

**DONE and ORDERED,** this ___28th___ day of December, 2005 at Denver, Colorado.

                                                   s/Lewis T. Babcock
                                                 United States District Chief Judge